IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TINA CASTLE NELSON,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:22-CV-0932-L** |
| | § | |
| **COTTONWOOD FINANCIAL TEXAS,** | § | |
| **LLC,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion for Summary Judgment ("Motion") (Doc. 41), filed April 17, 2023. For the reasons discussed herein, the court determines that Defendant is entitled to summary judgment on Plaintiff's claims for disparate treatment, disparate impact, failure to accommodate, and regarded as disabled, brought under the Texas Labor Code § 21.055. Accordingly, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment (Doc. 41); **overrules in part** and **sustains in part** Defendant's Objections and Motion to Strike Portions of Plaintiff's Summary Judgment Evidence (Doc. 56); **overrules** Plaintiff's objections to Defendant's summary judgment evidence; and **dismisses with prejudice** Plaintiff's claims against Defendant brought under the Texas Labor Code. Plaintiff's claim for retaliation under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), remains before the court.

## I.     Factual and Procedural Background

Defendant Cottonwood Financial Texas, LLC, ("Defendant" or "Cottonwood") timely removed this action to federal court on April 21, 2022 (Doc. 1), after Plaintiff Tina Castle Nelson ("Plaintiff" or "Ms. Nelson") filed her Original Petition ("Petition") in the 162nd Judicial District

Court of Dallas County, Texas. In her Petition, Ms. Nelson contends that Cottonwood violated Chapter 21 of the Texas Labor Code ("TLC") and the FMLA when it failed to accommodate her chronic back pain condition and ultimately terminated her after she took FMLA leave. Doc. 1-3 at 2-3. She brings four claims under the Texas Labor Code: (1) disparate treatment; (2) disparate impact; (3) failure to make reasonable accommodations; and (4) regarding her as disabled. *Id*. at 5-6. Ms. Nelson also asserts that Cottonwood terminated her in retaliation for taking FMLA leave, in violation of that statute. *Id*. at 8. She seeks actual and punitive damages, including lost wages, liquidated damages, and any other equitable relief to which she is entitled. *Id*. at 8-9.

On April 17, 2023, Defendant moved for summary judgment on all of Plaintiff's claims on the following grounds:

(1)　　Plaintiff's claim of disparate treatment and disparate impact under the Texas Labor Code fails because Plaintiff cannot establish that she was a qualified individual with a disability; and

(2)　　Plaintiff cannot prove her claim for retaliation under the FMLA because she cannot show a causal link between her FMLA protected activity and her discharge, or that her termination was pretextual.

Def.'s Summ. J. Br. 9.[1] Ms. Nelson filed a response on May 8, 2023, contending that genuine disputes of material fact and a substantial disputed issue of law preclude summary judgment on her claims. Defendant filed its Reply (Doc. 55) on May 22, 2023, and also filed a Motion to Strike Plaintiff's Brief and objected to portions of her summary judgment evidence ("Motion to Strike") (Doc. 56). Plaintiff then responded to the Motion to Strike, and Defendant replied. *See* Docs. 57, 58. The court now sets forth the facts upon which it relies to resolve the pending Motion and

---

[1] Defendant also argued that had Plaintiff asserted a claim for FMLA interference, she would be unable to show a prima facie case for that claim. As Plaintiff has not asserted such a claim, the court need not consider Defendant's arguments to defeat it.

objections, and applies the summary judgment standard as set forth in the following section of this opinion. Unless otherwise noted, the facts herein are undisputed.

Ms. Nelson was employed by Cottonwood, a retail consumer loan operator with stores branded "Cash Stores." Pl.'s Summ. J. App. Exhibit A ¶ 1 (hereafter, "Pl.'s Decl."); Def.'s Summ. J. App. 78-79. She was the Store Manager and sole employee at Store 7533, scheduled to work 47 hours for a Monday through Saturday workweek. Def.'s Summ. J. App. 9. As the Store Manager, Ms. Nelson was responsible for overall store operations, including opening and closing the store. *Id*. at 39.  Ms. Nelson and Store 7533 were supervised by District Manager Corina Garcia ("DM Garcia"), who was supervised by Regional Manager Johanna Artiga. *Id*. at 11. She worked there from October 3, 2016, until her termination in February 2021 that gave rise to the instant action. Pl.'s Decl. ¶ 1. For the first four years of her employment, Ms. Nelson was a satisfactory employee, although Cottonwood issued her two "improvement opportunity" notices in 2018 and 2019, unrelated to the issues here and in which she was not warned that she may be subject to termination. Pl.'s Summ. J. App. 10-11.

While on an approved vacation in October 2019, Ms. Nelson injured her back remodeling her kitchen. Pl.'s Decl. ¶ 2. Immediately after her injury, Ms. Nelson began to miss work unexpectedly and irregularly because of back pain that prevented her from moving or getting out of bed. *Id*. ¶ 3. Her injury caused her extreme pain, muscle spasms, and migraines, and prevented her from completing tasks, gradually worsening until she also began experiencing periods of unconsciousness. Def.'s Summ. J. App. 25-26, 35-36.

Because Cottonwood staffed Store 7533 with one employee, it was required to find a member of management or another store employee to cover a shift if the scheduled employee had an unexpected absence. *Id*. at 78-79. This caused the coverage employee, often a member of

management, to cancel "their work plans for all or part of the day, which disrupted other stores in the District." *Id*. at 79. Because of its lean staffing practice, Cottonwood required regular and predictable attendance at its cash stores, and wrote that requirement into its Attendance and Unsatisfactory Performance Policies. *Id*. at 95-96. When Ms. Nelson was unable to attend her scheduled shifts, DM Garcia would often be reassigned from her planned shifts to cover Store 7533, resulting in her inability to conduct training or complete other management tasks. *Id*. at 130.

On November 18, 2019, after missing multiple scheduled shifts because of her back pain, Ms. Nelson submitted an application for FMLA ("2019 FMLA Application") leave that included documentation from her physician. Pl.'s Decl. ¶ 3. In her 2019 FMLA Application, her physician stated that Ms. Nelson was receiving pain management treatment, and that her condition could last up to six months. Pl.'s Summ. J. App. 13-15. Her doctor recommended that she receive FMLA leave between October 8, 2019, and November 20, 2019, as well as time for monthly appointments with her doctor. *Id*. at. 15-17. The 2019 FMLA Application further stated that "Plaintiff will require rest during a flare up." *Id*.

Cottonwood's Human Resource Department ("HR") oversaw employee requests for leave and requests for reasonable accommodations, and Ms. Debbie Gion was the HR employee who worked with Plaintiff regarding her absences and FMLA leave. Def.'s Summ. J. App. 78. Ms. Gion approved Ms. Nelson's requested FMLA leave, which was extended to permit her to be away until January 28, 2020. Pl.'s Decl. ¶ 3.

When Ms. Nelson returned to work in January 2020, DM Garcia told her to "put in for accommodations in case [her] back acted up again and everything would be fine." *Id*. ¶ 4. There is no evidence in the record that Ms. Nelson followed up on that direction, but she stated that she believed—based on that conversation and a July 2020 request for her medication list—her job was

safe. *Id*. ¶¶ 4, 7. Ms. Nelson continued to have unscheduled and unexpected work absences, and by October 2020, she used all of her available vacation and sick time. *Id*. ¶ 6. On October 14, 2020, DM Garcia and Ms. Artiga issued Ms. Nelson a formal "Improvement Opportunity" regarding her attendance. Pl.'s Summ. J. App. Exhibit F. The Improvement Opportunity states:

> Description of Problem: Tina has been calling out excessively since 2020. 212 hours of unpaid time has been used which calculates to 27 work days. Dates include 10/7, 10/9, 9/28, 9/29, 10/1, 9/21, 9/22, 9/9, 8/24, 8/14, etc. This has also resulted in coming in late dates including 5/18, 6/23, 7/15, 7/20, 9/2, 9/14, and 9/15. DM has set expectations in regards to call outs, leaving early and coming in late multiple times with the most recent being sent on 10/6/2020.
>
> ***
>
> Description of Improvement Expected/Required: Attendance is very important. It is part of our policy which is included [in] the hourly handbook. As mentioned on the [e-mail] sent on 10/6 you were hired/promoted to fill a 47-hour work week.
>
> Failure to comply with the items addressed on this form may be subject to additional disciplinary action, up to and including termination.

*Id*. at 52. DM Garcia and Ms. Artiga asked Ms. Nelson again to contact HR about receiving accommodations regarding her absences. Def.'s Summ. J. App. 21. There is no evidence in the record that Ms. Nelson followed up on contacting HR.

Following the Improvement Opportunity conversation, Ms. Nelson missed work on October 26, 28, 29, 30, 31, and November 3, 4, 2020. *Id*. at 80. DM Garcia and Ms. Artiga sent a Termination Request (First Request) form to HR, asking for approval to terminate Ms. Nelson based on her unexpected absences and their negative impact on Cottonwood operations, and her lack of improved attendance despite counseling from her managers. *Id*. at 108-110. On the Termination Request form, DM Garcia and Ms. Artiga checked "No" next to the question "[i]s there any medical or anything that can be construed as a medical illness (can't stand & greet due to having knee problems, arthritis, pregnant, a learning disability etc.)?" *Id*. at 108. Ms. Gion

denied the first Termination Request to allow an opportunity for a discussion about reasonable accommodations with Ms. Nelson. *Id*. at 81.

Then, on November 10, 2020, Ms. Nelson was at her scheduled shift but her "back was hurting and spasming so bad [she] could barely move." Pl.'s Decl. ¶ 7. DM Garcia arrived and told Ms. Nelson that she was to be issued a verbal write-up for her absences. *Id*. With Ms. Artiga on speaker phone, both managers informed Ms. Nelson of how many days she missed and encouraged her again to contact HR regarding accommodations. *Id*. In that conversation, Ms. Nelson asked DM Garcia "what they mean by accommodations. There isn't anything that can help [her] at work when [she has] a migraine or severe back pain and can't move or even drive to work." *Id*. She also told them she assumed that accommodations had already been in place since she returned from her first FMLA leave. *Id*.

Later that day, Ms. Nelson spoke on the telephone with Ms. Gion regarding a request for reasonable accommodations. *Id*. Ms. Nelson discussed her back condition and said that "she didn't know [what accommodations to request] because if her back hurt[] to the point that she couldn't get out of bed, nothing is going to help." *Id*. She also told Ms. Gion that "if she had a migraine to the point that she could not open her eyes, nothing is going to help." *Id*. Ms. Gion did not suggest possible accommodations but encouraged Ms. Nelson to speak with her doctor and get back to her. *Id*. Ms. Nelson left work to go to a local emergency room for pain treatment, and she submitted a work excuse from the ER for the following day, November 11, 2020. *Id*.

Soon after, her physician completed a FMLA medical certification form ("2020 FMLA Application") that identified her as suffering from chronic back pain and migraines that "may cause acute flares of pain in which [Ms. Nelson] misses work." Pl.'s Summ. J. App. 25-28. The 2020 FMLA Application noted that her condition could last as long as 12 months. *Id*. The form

identified the job functions that Ms. Nelson was unable to perform as "prolonged sitting or standing; acute flare may cause [her] to miss work." *Id*. at 26. Ms. Nelson faxed the 2020 FMLA Application to HR on November 20, 2020, and it was approved the same day. *Id*. at 18-19. Ms. Gion signed the FMLA approval letter, stating that, per their earlier conversation, Ms. Nelson was approved for FMLA leave starting November 17, 2020, through December 25, 2020, and the letter describes how she could request additional leave, which she did, extending her approved leave through January 17, 2021. Def.'s Summ. J. App. 18-19; Pl.'s Decl. ¶ 9. On January 15, 2021, Ms. Nelson e-mailed a return-to-work letter from her doctor, attesting that she can start work again on January 18, 2021, but may continue to miss shifts due to "episodic flares of back pain and migraine headaches." Def.'s Summ. J. App. 127-28. Cottonwood accommodated Plaintiff's need to sit by encouraging her to do so after she stood to great customers, and that she could alternate sitting and standing throughout the day under normal work conditions. *Id*. at 83-84.

When she returned to work, however, the relationship between the parties became contentious. Ms. Nelson believed that DM Garcia began to treat her poorly by not answering phone calls and requests for help, and criticizing the way she worked. Pl.'s Decl. ¶ 9. Cottonwood, on the other hand, alleges that Ms. Nelson made unprofessional remarks about employees who covered Store 7533 during her FMLA absence and new customers. Def.'s Summ. J. App. 14, 130-133. Cottonwood believed she was not appropriately grateful to her coworkers who covered her FMLA leave, and complained "about how others handled files or loan declines." *Id*. at 84-85. It concluded that her insufficient gratitude was "unprofessional and harmed a sense of teamwork in the district." *Id*. at 85.

Ms. Nelson had unscheduled absences on January 29, February 3, 4, 5, and 11, 2021. *Id*. at 28. On February 11, 2021, DM Garcia and Ms. Artiga submitted a second Termination Request that stated:

> We are requesting the termination of SM Tina [Nelson] at store 7533 due to her unprofessional and unappreciative gestures towards associates that are helping her store by talking negatively towards their performance to [Chain of Command]. SM Tina also has a lack of care when it comes to her attendance causing DM Corina to fall behind on her tasks as well as causing other associates within the District not to be developed properly as DM Corina is having to cover store 7533 due to SM Tina's continuous call outs.

*Id*. at 130. The second Termination Request included dates in 2021 and November 2020—outside of Ms. Nelson's approved FMLA leave—that noted that she was absent from work because of stomach pains or vehicle problems, in addition to issues related to her back condition. *Id*. at 131-33.

After the Winter Ice Storm of 2021 in North Texas prevented Ms. Nelson from coming to work the week of February 14, 2021, she arrived at her scheduled shift on February 22, 2021, to find both DM Garcia and Ms. Artiga at Store 7533. Pl.'s Decl. ¶ 10. They informed Ms. Nelson that she was fired and that she should contact HR for a termination reason. When Ms. Nelson did so, Ms. Gion informed her that she "did not meet company expectations." *Id*.

## II. Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary

judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search

of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Defendant's Motion to Strike and Objections (Doc. 56)

As a threshold matter, the court addresses Defendant's Objections and Motion to Strike Portions of Plaintiff's Summary Judgment Evidence ("Objections") (Doc. 56) and Plaintiff's objections to Defendant's summary judgment evidence, raised in her Response brief (Doc. 50).

### A.  Discussion of Defendant's Evidentiary Objections

In its Objections, Defendant requests that the court strike certain testimony offered by Plaintiff in her Declaration because the statements are inadmissible hearsay, impermissibly vague, or conclusory. Def.'s Objs. 1. Specifically, Defendant objects to: (1) Plaintiff's Declaration ¶ 9 in which she says, "I was told they were not expecting me to come back" as this statement is hearsay not within any exception; and (2) Plaintiff's general objection to DM Garcia's statements regarding Plaintiff's purportedly ungrateful attitude to her coworkers as conclusory and irrelevant. *Id*. at 3-5. Defendant argues that "Plaintiff presents a Declaration that baldly disputes anything and everything [DM Garcia] has ever said about Plaintiff. But Plaintiff's conclusory broadside is not admissible evidence." Def.'s Reply Br. 5.

In Response to Defendant's Objections, Plaintiff argues that Defendant invokes the "sham-affidavit doctrine," asserting that Defendant's arguments are related to a conflict between Plaintiff's Declaration and deposition, and, beyond being a losing evidentiary argument at the summary judgment stage, she contends that any conflict would show a fact dispute. Pl.'s Resp. to Def.'s Obj. 1-2. Plaintiff then clarified that, insofar as she disputes statements in Ms. Gion's Declaration, she specifically denies the allegations "regarding her job performance which formed the basis for her termination." *Id*. at 2. She contends that her Declaration "controverts the factual basis for Cottonwood's decision to terminate her" as set forth in Ms. Gion's Declaration. *Id*. at 2-3. Therefore, she asserts, summary judgment is precluded.

Defendant filed a reply brief, correctly stating that Plaintiff failed to address its inadmissibility arguments related to her Declaration statements as inadmissible hearsay, vague, or conclusory. Def.'s Objs. Reply Br. 1. It argues that the third sentence of ¶ 11 of Ms. Nelson's Declaration is vague because it could be interpreted as meaning either "agreeing that she had issues with co-workers but disagreeing that this was a 'search for fault' or a 'complaint,'" or "arguing that she never had any issues with her co-workers." *Id*. at 2. It agrees with Plaintiff, however, that Plaintiff's Declaration and deposition assert one significant fact difference—whether Plaintiff ever had any issues with her coworkers. *Id*. at 2-3 (citing Pl. Summ. J. App. 6, 14-15, 17). Such a difference, as Defendant argues, is not slight, and without Plaintiff explaining the change, the court should strike the sentence as summary judgment evidence. *Id*. at 3.

1.  Objection to ¶ 9 of Plaintiff's Declaration

The court first considers Defendant's objection to Plaintiff's Declaration statement that "I was told they were not expecting me to come back." Defendant argues that this statement is similar to Plaintiff's deposition testimony, in which she asserted that an unnamed Cottonwood employee

commented that "[t]hey did not think I was going to come back [after taking FMLA leave]." Pl.'s Summ. J. App. 17. Without addressing the merits of Defendant's argument, the court finds the objection moot because Plaintiff does not present this statement at any point in her Response argument and, without her using it as support, the court finds no need to consider her statement to determine whether a genuine dispute of material fact exists.

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.

*Ragas*, 136 F.3d at 458. As such, the court does not consider evidence not relied upon by a party. Accordingly, Defendant's objection to ¶ 9 is **overruled as moot**.

### 2. Defendant's Objections to ¶ 11 of Plaintiff's Declaration

Next, the court considers Defendant's objection that Plaintiff's Declaration in the third sentence of ¶ 11 is vague, in which she states that she "specifically disputes" the statements made by Ms. Gion and DM Garcia "about [Plaintiff's] actions and deny that any of the conduct attributed to [her] by DM Garcia occurred at any time during [her] employment with Cottonwood." Def.'s Objs. 3-4 (quoting Pl.'s Decl. ¶ 11). In full, ¶ 11 states:

> I have read the declaration of Debbie Gion of Cottonwood which alleges that DM Garcia said that I failed to thank my coworkers who left their stores to cover Store 7533 when I was ill. I also read the allegation that I "searched for fault" and "complained about how others handled files or loan declines." I specifically dispute these statements allegedly made by DM Garcia about my actions and deny that any of the conduct attributed to me by DM Garcia occurred at any time during my employment with Cottonwood.

Pl.'s Summ. J. App. 6. When considered in the context of the entire paragraph, Plaintiff's statement is not vague. She specifically disputes any statement that painted her as ungrateful or complaining about her coworkers who covered her absence. This is not inconsistent, as Defendant attempts to

argue through dissection of the sentence. It is clear to the court that Plaintiff is disputing the allegation that she had issues with her coworkers who covered Store 7533 in her absence, which is distinct from her deposition statement that she generally did not have issues with her coworkers. The court, therefore, **overrules** Defendant's objection to this portion of ¶ 11.

As for the third sentence, taken in context, this is a general objection to Defendant's proffer of DM Garcia's statements as summary judgment evidence. Federal Rule of Evidence 103(a)(1) provides that an objecting party must make specific objections to the evidence it seeks to exclude, and those objections must state specific grounds for exclusion. Fed. R. Evid. 103(a)(1). Objections that lack specificity fail to satisfy the requirements of Rule 103, and a loose or imprecise objection does not preserve error. *HCI Chemicals (USA), Inc. v. Henkel KGaA*, 966 F.2d 1018, 1021 (5th Cir. 1992).

Accordingly, the court considers the statement "[I] deny that any of the conduct attributed to me by DM Garcia occurred at any time during my employment with Cottonwood" to be overly broad and vague because it does not identify which statements or conduct Plaintiff disputes. *See Alviar v. Macy's, Inc.*, 784 F. App'x 213, 217-18 (5th Cir. 2019) (affirming an order that overruled evidentiary objections for lack of specificity when the employee-litigant failed to "explain to the district court why he objected to the evidence."). Therefore, the court **sustains** Defendant's objection to the third sentence of ¶ 11 of Plaintiff's Declaration and will not consider it in resolving Defendant's Motion. As such, the court **overrules in part** and **sustains in part** Defendant's Objections and Motion to Strike Portions of Plaintiff's Summary Judgment Evidence (Doc. 56).

## B. Discussion of Plaintiff's Evidentiary Objections

In her Response to the Motion for Summary Judgment, Plaintiff objected to portions of Defendant's summary judgment evidence. Specifically, Plaintiff objects to: (1) ¶ 5 of Ms. Gion's

Declaration to the extent that it contradicts Plaintiff's written job description. Pl.'s Summ. J. Br. 18-19. Plaintiff argues that Ms. Gion's Declaration asserts that attendance in the scheduled work-hours requirement is an absolute requirement, but the facts of the case show that it is not because Defendant accommodated her absences. *Id*. Defendant argues that this objection is not a dispute of evidence but an argument, in part because Plaintiff herself agreed that her position required "regular and predictable attendance." Def.'s Summ. J. Reply Br. 20 (citing Def.'s Summ. J. App. 10).

As the court addresses herein at length, Fifth Circuit precedent generally holds that attendance is a requirement of any position, and thus, Ms. Gion's Declaration's introduction of that requirement to the Store Manager position does not change the court's analysis. Accordingly, Plaintiff's objection to this statement is **overruled** as moot.

Next, Plaintiff asserts that Ms. Gion's Declaration includes "many references to conversations she had with other employees of Cottonwood which are hearsay and not competent summary judgment evidence" because the statements are inadmissible hearsay. Pl.'s Summ. J. Br. 19. She asserts that "[e]xamples of such hearsay statements are contained in paragraphs 12, 13, 14, 15, 29 and 31." *Id*. Plaintiff points to the portions that allege her to be "unappreciative" and "unprofessional," which are DM Garcia's statements, offered into evidence through Ms. Gion's Declaration. *Id*. Defendant, citing Federal Rule of Evidence 103, responds that "[a]ll of these objections should be overruled because Plaintiff cites entire paragraphs and never identifies the specific statements that she claims are inadmissible hearsay." Def.'s Summ. J. Reply Br. 21. The court agrees.

Applying the law applicable to vague or imprecise objections as set forth above, the court finds that Plaintiff's generalized objections to Ms. Gion's Declaration do not meet the specificity

requirements of Rule 103, and as such, those objections are **overruled**. Nevertheless, to the extent that Ms. Gion's Declaration contains inadmissible statements of fact or unsupported legal conclusions, the court will not consider those statements. *See Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit). If any portions of Ms. Gion's Declaration are clearly inadmissible hearsay or lack a basis of personal knowledge, or generally fail to satisfy the admissibility requirements under the Federal Rules of Evidence, the court will also disregard such statements. *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012).

Having resolved the parties' objections to the offered summary judgment evidence, the court now considers Defendant's Motion for Summary Judgment.

## IV.    Discussion and Analysis of Claims

In its Motion, Cottonwood requests that the court grant summary judgment in its favor on all five of Plaintiff's claims: (1) disparate treatment, referred to here as disability discrimination; (2) disparate impact; (3) failure to accommodate; (4) regarded as disabled; and (5) retaliation under the FMLA. It argues that there are no genuine disputes of material fact as to these claims and that it is therefore entitled to judgment as a matter of law.

In Response, Ms. Nelson asserts that there remain genuine disputes of material fact on her claims for disability discrimination, failure to accommodate, and retaliation. She, however, did not address in her Response Cottonwood's arguments against her claim for disparate impact or its request for summary judgment on all of her claims, which includes her regarded-as-disabled claim under Chapter 21 of the TLC, and therefore the court determines that Ms. Nelson abandoned those claims. *See Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001) (finding that a plaintiff abandoned the claims that it failed to address at summary judgment); *see also Black v. North*

*Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (holding that a plaintiff's failure to pursue a claim beyond the complaint constitutes abandonment). Accordingly, the court dismisses with prejudice Ms. Nelson's claims for disparate impact and any argument that Defendant improperly regarded her as disabled under Chapter 21 of the TLC.[2]

The court now considers Defendant's request for summary judgment on Plaintiff's remaining claims for disability discrimination and failure to accommodate, brought under the TLC, and retaliation under the FMLA.

### A.  State Law Claims Under Chapter 21 of the Texas Labor Code

Chapter 21 of the TLC prohibits employers from discriminating against their employees based on disability. Tex. Lab. Code § 21.051(1). Because the Texas statute follows the ADA, such claims are treated similarly; the court, however, declines to infer an ADA claim when none is pleaded. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 520 (5th Cir. 2021) ("Despite the similarity, pleading a related claim under Texas law does not mean that an equivalent ADA claim is actually raised. We conclude there is no ADA claim here."); *see also Haggar Apparel Co. v. Leal*, 154 S.W.3d 98, 100 (Tex. 2004) ("One purpose of chapter 21 of the Texas Labor Code is to further the policies of Title 1 of the Americans with Disabilities Act of 1990, as amended []. Accordingly, in construing and applying chapter 21, we are guided by federal law.").

A plaintiff can prove disability discrimination through direct or circumstantial evidence. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Because Ms. Nelson relies on circumstantial evidence to support her state law claims, they are properly analyzed under the *McDonnell Douglas* burden shifting framework. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 300

---

[2] The court notes that even if Plaintiff had not abandoned her regarded-as-disabled claim, neither party addressed the claim—made in her Petition—in the briefing, and the parties assume and proceed as though Plaintiff was disabled as defined by Section 21.002(6) of the TLC. Thus, this claim is properly dismissed in the alternative as moot.

(5th Cir. 1999) (holding that *McDonnell Douglas* framework applies to disability discrimination cases when only circumstantial evidence of discrimination is offered); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As modified, the *McDonnell Douglas* framework consists of three stages. First, Ms. Nelson must establish a prima facie case of discrimination, which "creates a presumption that [Defendant] unlawfully discriminated against [her]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of disability discrimination, a plaintiff must show that: (1) she has a disability; (2) she was qualified for her job; and (3) she was subject to an adverse employment action on account of her disability. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

Second, if Ms. Nelson establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the employment action taken against her. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). Defendant's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Third, if Defendant meets its production burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of discrimination created by Ms. Nelson's prima facie case disappears, and the burden shifts back her to identify or offer evidence creating a factual dispute that Defendant's reason is not true, but is instead a pretext for discrimination. *Campos*, 10 F.4th at 521 (citing *LHC Grp.*, 773 F.3d at 694). To examine pretext, the standard of causation is less exacting under Texas state law than under parallel federal law. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477, 479–80 (Tex. 2001). "Though a 'but for' standard would apply under federal statutes, the Texas framework applies a 'motivating factor' standard in all state unlawful-employment-practice claims under Section 21.125 of the Texas

Labor Code." *Campos*, 10 F.4th at 521. As the disability discrimination statutes are under Chapter 21 of the Texas Labor Code, the motivating-factor test is properly applied here. *Id*.

    1.  <u>Prima Facie Case</u>

As the court set forth above, to state a prima facie case of disability discrimination under Chapter 21 of the TLC, Plaintiff must establish or raise a genuine dispute of material fact that: (1) she has a disability; (2) she was qualified for her job; and (3) she was subject to an adverse employment action on account of her disability. *Moss*, 851 F.3d at 417. The parties do not dispute that Plaintiff has a disability as defined by statute and that she suffered an adverse employment action when she was terminated. The parties argue over the second element—whether Plaintiff was qualified for her position.

To avoid summary judgment on the question of whether at the time of her termination, Ms. Nelson was "qualified," she must establish or raise a genuine dispute of material fact as to: (1) whether she could perform the essential functions of the job in spite of her disability; or (2) "that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Id*. at 418. The court addresses whether: (1) Plaintiff was a qualified individual who could perform the essential functions as the manager of Store 7533 at the time of her termination; and (2) Cottonwood failed to reasonably accommodate her disability.

    2.  <u>Ability to Perform the Essential Functions of her Position</u>

Defendant argues that Ms. Nelson has failed to establish the prima face elements of disability discrimination under Texas state law. Cottonwood argues that Ms. Nelson was not a qualified individual because she was unable to achieve regular and predictable attendance, which is an essential requirement for her position as the sole employee at Store 7533. Def. Summ. J. Br. 42. To support its contention that regular attendance is an essential requirement, Defendant

points to both its Attendance and Unsatisfactory Performance Policies, as well as Fifth Circuit caselaw holding that "regular work-site attendance is an essential function of most jobs." *Id*. (citing *Credeur v. Louisiana Through Off. of Att'y Gen*., 860 F.3d 785, 793 (5th Cir. 2017)).

Plaintiff responds that a part-time or modified schedule can be a reasonable accommodation, citing guidance from the EEOC and cases from courts outside of the Fifth Circuit. Pl.'s Summ. J. Br. 8-9. She contends that Defendant failed to establish that attendance was an essential function of her position because the Store Manager job description did not address regular attendance and Cottonwood does not offer any evidence of how the store was covered in her absence. *Id*. at 7-8. She asserts that these failings show that this is a material fact issue the requires jury determination. *Id*. at 8.

In Reply, Defendant points to Plaintiff's deposition testimony, in which she agreed that regular and predictable attendance is important for the Store Manager at Store 7533. Def.'s Reply Br. 7-8. It argues further that Plaintiff's argument regarding the job description does not understand the law, which does not strictly limit essential functions to those found in a job description. *Id*. at 7 (citing *Weber v. BNSF Ry., Co.*, 989 F.3d 320, 326 (5th Cir. 2021)). Finally, it contends that Ms. Gion's Declaration explained the hardship that Defendant suffered when it had to reassign regional management to cover Plaintiff's unscheduled absences. *Id*. at 8.

A job function is essential if it has "more than a marginal relationship" to the employee's job. *LHC Grp., Inc.*, 773 F.3d at 697 (internal citations omitted). The Fifth Circuit has long held that regular attendance is an essential function of any job. *Weber*, 989 F.3d at 325 (citing *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (per curiam) (collecting cases)). "To determine whether a function is essential, we look to several factors, such as the 'employer's judgment as to which functions are essential' and 'the consequences of not

requiring the incumbent to perform the function.'" *Weber*, 989 F.3d at 325. Applying the parallel ADA requirements here, the court must "give greatest weight to the employer's judgment factor, though [it] must evaluate the employer's words alongside its policies and practices." *Id.* (internal citations and quotes omitted).

Here, Defendant presented evidence that regular and predictable attendance was an essential requirement of the Store Manager position in its Attendance and Unsatisfactory Performance Policies, as well as Ms. Gion's Declaration. As Ms. Nelson was the sole employee at Store 7533, her attendance was necessary for the store to be open. Further, she agreed in her deposition testimony that because she was the sole employee, her regular and predictable attendance was important. Plaintiff fails to raise any genuine dispute of material fact or controvert this evidence, and the court determines it to be competent summary judgment evidence.

Next, the court considers the hardship imposed on the employer if the employee is not able to complete the essential job functions. Here, Defendant showed that it suffered hardship through Ms. Gion's Declaration, the notes on the first and second termination request, and Ms. Nelson's deposition testimony which described that when she called out, Cottonwood "pulled" another manager to cover her absence. It further showed that when DM Garcia, for example, was reassigned to Store 7533 to cover Plaintiff's unscheduled absence, she was unable to complete scheduled employee trainings and audits.

Considering this evidence, the court concludes that regular job attendance was an essential function of Plaintiff's position, and, as she told Cottonwood multiple times, she was unable to reasonably assure her ability to come to work regardless of any accommodation. Therefore, Plaintiff fails to raise a genuine dispute of material fact that she was a qualified person for her

position at the time of her termination, and Defendant is entitled to judgment as a matter of law on this claim.

    3.  <u>Failure to Accommodate Claim</u>

Defendant argues it is entitled to summary judgment on Plaintiff's claim for failure to accommodate because Plaintiff failed to request a specific or reasonable accommodation. Def.'s Summ. J. Br. 19. It asserts that Plaintiff did not request a specific accommodation because she did not follow management's direction to contact HR with an accommodations request. It also points out that she told DM Garcia and Ms. Gion that she did not know what accommodation to request because "nothing [was] going to help" her attendance when her back hurt. *Id*. (quoting Pl. Decl. ¶ 7). Because Plaintiff failed to identify an accommodation that would have resulted in regular and predictable attendance, Defendant contends that she has failed to establish or raise a genuine dispute of material fact to support her failure-to-accommodate claim. *Id*. Cottonwood also argues that Plaintiff's 2020 FMLA Application request for an accommodation that would allow her unscheduled and unlimited leave is not reasonable. *Id*. at 42.

In response, Plaintiff argues that Cottonwood bore the responsibility to suggest an appropriate accommodation. *See* Pl.'s Summ. J. Br. 8. She contends that "[a]t the time of [her] termination, it is undisputed that [she] had a medical condition and that she had requested accommodations" *Id*. at 12. She also asserts that because her disability was open and obvious, she did not have to make a formal request for an accommodation for Cottonwood to suggest reasonable accommodation. *Id*. at 8. Rather, Cottonwood, as she argues, failed to engage in an interactive process with her regarding her medical condition and should have gathered more medical information. *Id.* She asserts that this breakdown in communication shows a triable issue of fact as

to whether Cottonwood's refusal to engage in the mandated process and failure to request additional medical information from her violated the law. *Id.* at 10.

In reply, Defendant asserts that this argument fails by law because: (1) Plaintiff had the responsibility to suggest an accommodation because she and her medical care providers were in the best position to know what would be best; and (2) an accommodation that is unscheduled and unlimited leave is neither an obvious nor reasonable accommodation to achieve regular and predictable attendance. Def.'s Reply Br. 8-9. Plaintiff fails to show, Defendant continues, that such an accommodation would allow her to achieve regular and predictable attendance. *Id.* at 11.

Under the TLC, it is unlawful for an employer "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability . . . unless [the employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business." Tex. Lab. Code Ann. § 21.128(a). To establish a TLC failure-to-accommodate claim, a plaintiff must show that: "(1) [she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020) (citation omitted).[3] Failure to show that a reasonable accommodation of her disability would have enabled her to perform the essential functions of her job is a failure to show a prima facie case for disability discrimination under state law.[4] *See Campos*, 10 F.4th at 520.

---

[3] In *Clark*, the Fifth Circuit, after noting that the language of the TLC parallels that of the ADA, applied the same prima facie elements to a failure-to-accommodate claim under the TLC and ADA. *Clark*, 952 F.3d at 578, n.16.

[4] The court has already determined that Plaintiff has failed to present facts demonstrating that she was qualified under the ADA, and thus, she is foreclosed from arguing that Defendant impermissibly failed to engage in the interactive accommodations process before terminating her. Defendant's termination of Plaintiff could not present a failure to reasonably accommodate when she cannot identify any reasonable accommodation that would have enabled her to

Here, both Plaintiff and Defendant are correct in some sense. "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Moss*, 851 F.3d at 418 (citing *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016)). For the purposes of resolving Defendant's Motion, the court presumes, taking all facts in the light most favorable to Plaintiff, that she satisfied the legal requirements for requesting an accommodation. *Chevron*, 570 F.3d at 621 ("An employee who needs an accommodation . . . has the responsibility of informing [her] employer."). As time-off can be a reasonable accommodation, the real issue presented is whether Plaintiff's specific request for a time-off accommodation was reasonable.

The parties present evidence of two formal requests for accommodations. The first was Plaintiff's 2019 FMLA Application. In that request, Plaintiff's physician stated that she "will require rest during a flare up," and that the condition may last as long as six months. The condition lasted longer than six months, causing Plaintiff to miss work well beyond the anticipated duration. Defendant, however, does not rely on any unscheduled absences that occurred before October 2020 to justifying her termination. Plaintiff was absent from her scheduled shifts on unspecified dates between January and October 2020, and there is no evidence that she suffered and adverse action during that time. Defendant did accommodate Plaintiff's need for a time-off accommodation during that time because it did not penalize Plaintiff for those missed dates. Thus, the court finds that this request is not at issue here.

---

perform the essential functions of her job. *See Moss*, 851 F.3d at 419, n.3 (citing *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005)). Despite this threshold failure that would allow the court to find that Plaintiff failed to raise a genuine dispute of material fact and grant Defendant summary judgment on this claim, the court will consider Plaintiff's failure-to-accommodate argument to provide a fulsome analysis of her contentions.

Plaintiff's second accommodations request began on November 10, 2020, during the telephone call between her and Ms. Gion, and was formalized in the 2020 FMLA Application that followed. During the call, Plaintiff discussed her need for accommodations but said that she did not know what accommodations could help. She said that there is not an accommodation that can help her attend work if she has a migraine or back pain flare-up because she cannot move or even drive on those days. She told her managers the same thing during a write-up meeting earlier that day. Plaintiff followed up on the conversation with a formal FMLA request form including medical documentation. She submitted her 2020 FMLA application, in which her physician noted that an "acute flare may cause [her] to miss work" during a possible 12-month condition duration, and, then in her return-to-work letter, after clearing Plaintiff to return to work full-time, her doctor noted that Plaintiff may continue to miss shifts due to "episodic flares of back pain and migraine headaches."

This request for episodic leave on an unknown frequency for a year—double the time of her 2019 FMLA Application—is not reasonable. *Moss*, 851 F.3d at 418 (finding no obligation for an employer to provide *indefinite* leave as an accommodation) (emphasis added); *see also Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996) (finding that an employee's argument for indefinite leave is meritless because a reasonable accommodation does not require an employer to "wait indefinitely for [the employee's] medical conditions to be corrected.") (internal citation omitted).

Although Plaintiff argues that her request for unscheduled and irregular leave is a reasonable accommodation, she fails to point to any Fifth Circuit or Supreme Court case that finds unscheduled and indefinite leave to be a reasonable accommodation. Rather, she cites cases that allow leave for specific times and an ascertainable duration, such as "leave for treatment,

recuperation, or training on managing diabetes." Pl.'s Summ. J. Br. 8-10. The court concludes that Plaintiff's request for episodic, unscheduled leave for one year was not a reasonable accommodation, and thus she has not established that Defendant failed to accommodate her reasonable request. As she has failed to establish a prima facie claim or raise a genuine dispute of material fact for either disability discrimination or failure to accommodate under the TLC, the court need not continue the *McDonnell Douglas* framework analysis. Accordingly, Defendant is entitled to summary judgment on her state law claims.

### B.  FMLA Retaliation – Applicable Law

The FMLA provides the right of an eligible employee "to take up to twelve weeks of leave in any one-year period to address a family member's or the employee's own serious health condition." *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015). "Employers subject to the FMLA must comply with two separate 'prohibited acts' provisions found in Section 2615(a) of the FMLA." *Id*. Those provisions make it unlawful for any employer to (1) "interfere with, restrain or deny the exercise of or the attempt to exercise, any right provided in this subchapter," and (2) penalize employees for exercising their FMLA rights through "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1), (2). Courts classify the former as an interference claim and the latter as a retaliation claim. *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

#### 1.  Plaintiff's FMLA Retaliation Claim

Ms. Nelson asserts that Cottonwood willfully retaliated against her use of protected FMLA leave when it terminated her after she returned from leave on January 18, 2021. Given that she has presented no direct evidence, the court determines that this is an indirect evidence case. Generally,

the traditional *McDonnell Douglas* burden-shifting framework applies to claims for FMLA retaliation when there is no direct evidence of retaliatory intent. *Amedee v. Shell Chemical, L.P.*, 953 F.3d 831, 835 (5th Cir. 2020); *see generally McDonnell Douglas*, 411 U.S. 792. Under this framework, the employee must first meet her burden of establishing a prima facie case of retaliation, which requires Ms. Nelson to present evidence that "(1) [s]he was protected under the FMLA; (2) [s]he suffered an adverse employment action; and (3) the adverse action was taken because [s]he sought protection under the FMLA." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (citing *Mauder v. Metropolitan Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006)).

If the employee succeeds in making a prima facie case, the burden of production (though not persuasion) shifts to the employer to "articulate a legitimate, nondiscriminatory or nonretaliatory reason" for its action. *Ion*, 731 F.3d at 390-91. If the employer does this, the burden swings back to the employee, who must offer sufficient evidence to create a genuine dispute of fact that employer's proffered reason is a pretext for discrimination, or that its reason is true but is not the sole reason for its conduct, another of which was retaliation. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). "If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory [or retaliatory] animus" or motive. *Id.* (emphasis in original). The final burden of the employer in a mixed-motive analysis "is effectively that of proving an affirmative defense." *Id*. Otherwise stated, at this step, Defendant must provide sufficient evidence to establish, as a matter of law that, despite any retaliatory animus, it would still have terminated Ms. Nelson. *Amedee*, 953 F.3d at 835; *Ion*, 731 F.3d at 392.

To raise a genuine dispute of material fact as to whether a proffered reason is pretextual, a plaintiff may do so by using "*any evidence* that casts doubt on the credence" of the stated reason for termination. *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021) (citing *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (emphasis in original). "A reason is unworthy of credence if it is not the real reason for the adverse employment action." *Id*. (quotation omitted).

### i.    *Prima Facie Elements*

To make a prima facie case of retaliation under the FMLA, the employee must show, or raise a genuine dispute of material fact, that: (1) she engaged in protected activity under the FMLA; (2) she suffered an adverse employment action; and (3) there is a causal link between her protected activity and the adverse employment action. *Amedee*, 953 F.3d at 835.

It is undisputed that Ms. Nelson engaged in protected activity when she used her entitlement to FMLA leave November 17, 2020, through January 18, 2021. Further, the parties do not dispute that she suffered an adverse employment action when she was terminated in February 2021. Accordingly, the court concludes that Ms. Nelson has satisfied the first two elements of a prima face case.

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for FMLA retaliation because she cannot show a causal link between her protected FMLA leave in November 2020 through January 2021 and her termination on February 22, 2021. Def.'s Summ. J. Br. 21-22. It asserts that Plaintiff has no evidence that she heard negative comments about her FMLA leave, and that Ms. Gion's Declaration refutes any animus. *Id*. at 22. As for any argument related to temporal proximity, Cottonwood points to evidence that it counseled Plaintiff on her excessive absences and first requested her termination before she requested FMLA leave on November 20, 2020. *Id*.

In Response, Plaintiff contends that Defendant disciplined and ultimately terminated her in close temporal proximity to her FMLA leave. Pl.'s Summ. J. Br. 17-18. She points first to an "improvement opportunity" on November 5, 2020, in which Cottonwood disciplined her for absences that were covered by her first FMLA leave. *Id*. Then, she continues, when she returned to work after her second FMLA leave in January 2021, Cottonwood terminated her within thirty-five days. *Id*. at 18. She argues that this temporal proximity is sufficient to show a causal link between her FMLA protected activity and adverse action. *Id*.

"In evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave and the termination." *Mauder*, 446 F.3d at 583 (citation and internal quotation marks omitted). Further, an employee "does not have to show that the protected activity is the only cause of [her] termination." *Id*. (citation omitted). An employee, however, "is required to show that the protected activity and the adverse employment action are not completely unrelated." *Id*. (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

Here, the court determines that Plaintiff has established a causal link between her second FMLA leave in January 2021 and her termination thirty-five days after her return to work. Her termination was predicated in part on her absences, showing a strong connection between her protected FMLA activity and her termination. Defendant's argument that Ms. Nelson's termination notice did not specifically list the absences during her FMLA leave is quite beside the point. The temporal proximity as well as her absences cited as a cause for termination are sufficient to show that the "protected activity and the adverse employment action are not completely unrelated." *Mauder*, 446 F.3d at 583.

In sum, Plaintiff has shown that she took protected FMLA leave, and thirty-five days later, Cottonwood terminated her, in part due to her absences related to her FMLA leave.[5] Accordingly, the court **finds** that Plaintiff has stated a prima facie case for FMLA retaliation.

>        ii.        *Legitimate, Nonretaliatory Reason*

The burden now shifts to Defendant to offer a legitimate, nonretaliatory reason for Ms. Nelson's termination. In its brief, Defendant argues that Plaintiff was terminated for non-protected absences that were unscheduled and irregular, as well as her "unappreciative" and "unprofessional" comments made upon her return from FMLA leave on January 18, 2021. Def.'s Summ. J. Br. 23. Plaintiff does not argue that Defendant has set forth a legitimate, nonretaliatory reason.

While Ms. Nelson disputes the statements related to her purportedly "unprofessional" comments, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-[retaliatory] reason." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). Accordingly, Defendant has satisfied its burden of articulating a legitimate, nonretaliatory reason for Ms. Nelson's termination.

>        iii.        *Pretext or Motivating Factor*

The burden now shifts to Plaintiff to show that Cottonwood's stated reason is either pretext or that retaliation was a factor in her termination. *Richardson*, 434 F.3d at 333. Under the latter scenario, she "bears the burden of offering sufficient evidence to create a genuine dispute of material fact that [Defendants'] nondiscriminatory reasons, although true, are only some of the reasons for [their] conduct, another of which was discrimination." *Ion*, 731 F.3d at 391 (affirming

---

[5] Although Plaintiff states in her Response Brief that she was terminated "less than thirty days" after she returned from FMLA leave on January 18, 2021, there were 35 calendar days between then and February 22, 2021, her termination date. This factual error is of no consequence to the court's analysis.

that the mixed-motive framework applies to FMLA cases). In other words, she must offer evidence to show "that the exercise of [her] FMLA rights was a motivating factor in [her] termination." *Id*. While the presumption of retaliation is no longer operative once the employer meets its burden of production, "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom" may still be considered "on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (citation omitted).

Ms. Nelson has presented sufficient evidence to create a genuine dispute of material fact as to whether her exercise of her FMLA rights was a motivating factor in her discharge, or that Defendant's reasons for termination were pretextual. She first points to the timing of her termination. Specifically, she was terminated on February 22, 2021, thirty-five days after she returned from protected FMLA leave. While the Fifth Circuit has recognized that "[c]lose timing between an employee's protected activity and an adverse action may provide the causal connection necessary to establish a prima facie case of retaliation," suspicious timing alone is insufficient to establish pretext. *Shannon v. Henderson*, 275 F.3d 42, 2001 WL 1223633 at *4 (5th Cir. 2001) (quoting *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)); *see also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004).

Here, Ms. Nelson presents more than suspicious timing. She offers Cottonwood's justifications in the Second Request for Termination, as well as Ms. Dion's Declaration that alleged that her "unappreciative" and "unprofessional" comments were a reason for her termination. Cottonwood offers Plaintiff's alleged comments as the primary reason for her termination, and that her absences were a secondary reason. Defendant's organization of its asserted reasons for termination, however, cannot obfuscate that (1) her absences related to her prior FMLA leave were a stated reason for termination, and (2) termination for allegedly

unprofessional comments are suspicious on their face. Cottonwood does not offer evidence that "unprofessional comments" are an infraction that results in termination. Although Cottonwood argues that its reasons for firing Plaintiff based on her absences predate her FMLA leave, it cites specifically that it terminated for Ms. Nelson's unappreciative and unprofessional comments about her co-workers who covered the store during her second FMLA absence. Those "unappreciative" comments were about the coworkers who covered her FMLA leave are a direct reference to her protected leave that shows irritation at the burden her leave imposed on the regional management. Moreover, that termination would follow an employee's negative comments about coworkers and customers—a workplace activity so common as to be a source of comedy in every profession— smacks of pretext.

Drawing all reasonable inferences in Plaintiff's favor as the nonmoving party, and considering this evidence, the court concludes that Plaintiff has offered sufficient evidence from which a jury could reasonably conclude that her termination was retaliation for her taking FMLA leave. The temporal proximity of her FMLA leave to her termination that was predicated on unscheduled absences because of her medical condition and the suspect "unprofessional comments," taken as a whole, are sufficient to raise a genuine dispute of material fact as to whether retaliation was a motivating factor in Ms. Nelson's termination, or that the offered reasons for termination were pretextual. This back-and-forth between the parties on this matter presents a quintessential fact issue reserved for the province of a jury. Thus, the court may not grant summary judgment on this claim.

Finally, in the context of seeking summary judgment on her FMLA retaliation claim, Defendant does not argue or produce any evidence that it would have terminated Ms. Nelson

anyway, just that the reasons for her termination predate her 2020 FMLA leave. Accordingly, the court **denies** Defendant's Motion as to Ms. Nelson's FMLA retaliation claim.

## IV.    Conclusion

For the reasons explained, the court **grants in part** and **denies in part** Defendant's Motion for Summary Judgment (Doc. 41). Specifically, the court **grants** Defendant's Motion with respect to Ms. Nelson's claims for disparate treatment, disparate impact, failure to accommodate, and regarded as disabled under the Texas Labor Code. As she has failed to raise a genuine dispute of material fact as to those claims, they are hereby **dismissed with prejudice**. As genuine disputes of material fact remain for trial with respect to Ms. Nelson's FMLA retaliation claim, the court **denies** Defendant's Motion as to this claim.

**Given the court's ruling, it strongly encourages the parties to consider an expeditious resolution of the pending FMLA retaliation claim without the necessity of court intervention. The court notes that this is not an "open-and-shut" case for either side. As the court has made its definitive rulings, the parties are in a superior position to revisit their relative strengths and weaknesses regarding the remaining claim. The court directs the parties to inform it in writing no later than September 1, 2023, whether they can resolve this action without further court involvement. If the parties cannot resolve this action without a trial, the court directs them to inform it in writing of three separate months, starting in January of 2024, of their availability for the trial of this action, and inform the court of the estimated length of time to try this action if necessary. The parties are not to offer back-to-back months for a possible trial of this action. The court will enter an amended scheduling order resetting the trial of this action and other pretrial deadlines if a trial is necessary.**

**It is so ordered** this 16th day of August, 2023.

Sam A. Lindsay
United States District Judge